UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| STEVEN BACH,<br><br>    Plaintiff,<br><br>v.<br><br>THE ANDERSONS, INC.,<br><br>    Defendant. | CIVIL ACTION NO. 5:22-226-KKC<br><br><br>**OPINION & ORDER** |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on defendant The Andersons, Inc.'s motion to compel arbitration and stay or, in the alternative, dismiss the case (DE 4) as well as plaintiff Steven Bach's motion to stay arbitration (DE 6). For the following reasons, the Court will GRANT The Andersons' motion, compel arbitration, and stay the action pending arbitration.

**I.**

This case involves a contract dispute originally submitted to arbitration before the National Grain and Feed Association (NGFA). Bach is a farmer in the grain business and The Andersons is a grain buyer. In June of 2020[1], Bach contracted to sell grain to The Andersons with the assistance of Boyd Brooks and Aletheia Risk Management, grain brokers who help farmers like Bach market and sell grain crop to third-party buyers.[2] Bach would contact Brooks and/or Aletheia and let them know that he had grain product to sell. (DE 4-1 at 5-6). Brooks would then contact their business

---

[1] Bach states that he began selling grain to The Andersons in 2019, but the contracts at issue only show agreements beginning in 2020.
[2] There is a dispute as to the exact relationship between Bach, The Andersons, and non-party Brooks and Aletheia. Bach states that Brooks was an agent of The Andersons (DE 6 at 2). The Andersons denies this, and points to pleadings in a separate lawsuit wherein Bach seems to have claimed Brooks and Aletheia were his agents. (DE 4 at 8 n.5). Though that agency relationship may very well be relevant to the underlying contractual claims, the exact nature of the third-party relationship is irrelevant to the issue of arbitration before the Court.

partners, including The Andersons, and notify them of grain product they could purchase. (*Id.*). The Andersons would then arrange for the sale and transport. (*Id.*).

According to The Andersons, the common practice was to send confirmation of the sale to Brooks/Aletheia, acting on behalf of Bach. Brooks/Aletheia served as a conduit for much of the business between Bach and The Andersons. The sale contracts at issue here were for approximately 130,000 bushels of soybean, 80,000 bushels of corn, and 25,000 bushels of wheat, scheduled for delivery between March and July of 2021.[3] On September 22, 2020, as part of the deal, Bach signed the document of primary importance in this matter—a Customer Flex Agreement. This agreement contained the following provisions which mandated arbitration in any disputes or controversies arising out of the contracts:

> 1. Customer and The Andersons, Inc. ("Andersons") warrant and agree that all contracts and their amendments (collectively, "Contracts") are cash contracts for the delivery of agricultural products. All Contracts will be governed by the Standard Purchase Contract Terms on the reverse side of each Purchase Contract and Confirmation, along with applicable Grain Trade Rules of the National Grain and Feed Association, as amended from time to time ("NGFA Grain Trade Rules"), and this Customer Flex Agreement ("Agreement").
>
> 2. Both parties agree: **(A) CONTRACTS ARE MADE IN ACCORDANCE WITH THE APPLICABLE NGFA GRAIN TRADE RULES (A COPY WILL BE SUPPLIED UPON REQUEST) EXCEPT AS MODIFIED BY IN THE CONTRACTS, AND (B) ANY DISPUTES OR CONTROVERSIES ARISING OUT OF CONTRACTS SHALL BE ARBITRATED BY THE NATIONAL GRAIN AND FEED ASSOCIATION, PURSUANT TO ITS ARBITRATION RULES. THE DECISION AND AWARD DETERMINED THROUGH SUCH ARBITRATION SHALL BE FINAL AND BINDING UPON THE BUYER AND SELLER. JUDGMENT UPON THE ARBITRATION AWARD MAY BE ENTERED AND ENFORCED IN ANY COURT HAVING JURISDICTION THEREOF.**

(DE 1-5, Ex. A "Flex Agreement", at ¶ 2).

---

[3] The wheat contracts were settled in lieu of performance. Accordingly, the only contracts at issue in the underlying dispute are the corn and soybean contracts.

In January of 2021, ahead of the scheduled grain deliveries, The Andersons emailed copies of the contracts, which Bach signed. In all, Bach signed ten relevant documents—nine grain contracts and the Flex Agreement. According to The Andersons, Bach requested several modifications to the delivery period and futures reference price, and a final delivery date for the corn and soybean contracts was set for March of 2022. (DE 1-1 at 3). At some point The Andersons became concerned about Bach's upcoming performance. Prior to delivery, The Andersons requested assurances from Bach, which he did not provide. (*Id.*). Accordingly, The Andersons cancelled the contracts and sought to recover damages from Bach in the amount of $1,325,863.63. On March 31, 2022, The Andersons initiated NGFA arbitration for the alleged breach of multiple contracts. (See DE 1-1). On April 4, 2022, the NGFA accepted the case for arbitration. (DE 4-4).

Bach took two actions in response to The Andersons' pursuit of arbitration. First, Bach and other plaintiffs filed suit against Boyd Brooks and Aletheia Risk Management in the U.S. District Court for the Eastern District of Kentucky. The Andersons were not named in this action, though they were a relevant and noted party. The complaint alleged fraud, misrepresentation, negligence, and other claims related to contracts and transactions between Brooks & Aletheia and various grain producers—some being the same contracts at issue here. (*See generally* DE 4-1). On August 2, 2022, the district court dismissed these claims with prejudice pursuant to the defendants' 12(b)(6) motion. *See Alford v. Brooks*, 618 F. Supp. 3d 621 (E.D. Ky. 2022).

Second, Bach and the other plaintiffs requested that the NGFA stay arbitration pending the resolution of the aforementioned suit. On July 26, 2022, the NGFA denied that request, stating that The Andersons had made "an adequate showing the parties agreed in contracts that are part of these claims for NGFA arbitration to resolve disputes arising out of these contracts." (DE 4-5).

On August 17, 2022, Bach filed the current action in Bath Circuit Court. (DE 1-5). On September 6, 2022, The Andersons removed the action to this Court. The Andersons seek an order compelling arbitration and either the stay or dismissal of Bach's suit. Bach moves the Court to stay the arbitration.

## II.

The Federal Arbitration Act governs this dispute. Under the FAA, "[w]hen asked by a party to compel arbitration under a contract, a federal court must determine whether the parties have agreed to arbitrate the dispute at issue." *Great Earth Companies, Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002). Section 2 of the FAA governs the validity of arbitration agreements and provides that a written agreement to arbitrate disputes arising out of a contract involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. When a party to an arbitration agreement refuses to arbitrate, the aggrieved party may file a motion with the Court to compel arbitration. 9 U.S.C. § 4. The Court then has four tasks: (1) determine whether the parties agreed to arbitrate; (2) determine the scope of that agreement; (3) if federal statutory claims are asserted, consider whether Congress intended those claims to be nonarbitrable; and (4) if it finds the claims to be subject to arbitration, determine whether to stay or dismiss the present action. *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000).

Federal policy favors arbitration. Courts must "examine the language of the contract in light of the strong federal policy in favor of arbitration, [and] any ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration." *Id.* In short, arbitration is a matter of contract and courts must "rigorously enforce arbitration agreements

according to their terms. *In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th 873, 878 (6th Cir. 2021) (citing *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013)) (cleaned up).

When determining the validity of arbitration agreements, courts generally apply ordinary state-law principles that govern the formation of contracts. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). When ruling on a motion to compel arbitration, however, courts apply the same summary judgment standard they use under FCRP 56. *See Simons*, 288 F.3d at 889. ("The party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate, a showing that mirrors the summary judgment standard."). "If the district court is satisfied that the agreement to arbitrate is not in issue, it must compel arbitration. Conversely, if the court finds that the validity of the arbitration agreement is in issue, the matter must proceed to trial to resolve the question." *Gilkinson Farms, LLC v. Andersons, Inc.*, No. CV 5: 22-229-DCR, 2022 WL 17070518, at *3 (E.D. Ky. Nov. 17, 2022).

Finally, disputes over arbitration provisions invoke the severability principle. Thus, "in deciding whether a valid agreement to arbitrate exists, district courts may consider only claims concerning the validity of the arbitration clause itself, as opposed to challenges to the validity of the contract as a whole." *Id.* (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04 (1967)).

**III.**

Bach contends that he and The Andersons never agreed to arbitrate. Specifically, he argues that (1) the alleged contracts are single page documents containing no arbitration provisions and (2) the signed pages of the documents make no reference by incorporation to any other contractual provisions. The thrust of Bach's argument is that the contract pages he signed in January of 2021 made no reference to arbitration. According to Bach, the emailed pages he signed were numbered

"1 of 2" and there was only one page "2 of 2" containing arbitration language attached—which he never signed. Further, Bach argues that even if the arbitration clauses on page 2 of the contracts were part of the contract he signed, there is no incorporation language on the first pages (pages 1 of 2, per Bach).

This argument fails for two reasons. First, and most importantly, it fails to address the Flex Agreement that Bach signed prior to the contracts at issue here. The arbitration provision in the Flex agreement is broadly drafted to include "all [cash] contracts and their amendments ... for the delivery of agricultural products." The Flex Agreement clearly applies to all contracts executed after it. The broad language would also cover any agreements predating the Flex Agreement. *See Gilkinson*, 2022 WL 17070518, at *3; *Furnwood Farm, LLC v. Andersons, Inc.*, No. CV 5:22-227-DCR, 2022 WL 16703133, at *4 (E.D. Ky. Nov. 3, 2022). There is simply no reasonable basis to conclude that Bach did not agree to arbitrate when he signed the clear and unambiguous Flex Agreement.

Second, the contract pages that Bach signed explicitly state, right above the signature line, that "**PARTIES ACCEPT ADDITIONAL TERMS ATTACHED**." (*See* DE 1-1, Ex. C). The terms and conditions page states that "any disputes or controversies arising out of this Contract shall be arbitrated by the NGFA pursuant to its Arbitration Rules." (*Id.* at Ex. D). Thus, Bach's contention that the page 2 conditions were not incorporated by reference is unpersuasive. When an arbitration provision is broadly written, "only an express provision excluding a specific dispute, or 'the most forceful evidence of a purpose to exclude the claim from arbitration,' will remove the dispute from consideration by the arbitrators." *Watson Wyatt & Co. v. SBC Holdings, Inc.*, 513 F.3d 646, 650 (6th Cir. 2008) (quoting *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 577 (6th Cir. 2003).

Having determined that the parties agreed to arbitrate, the Court must determine the scope of the agreement. The Flex Agreement provides that the parties will arbitrate "any disputes or controversies" arising out of the parties' cash contracts for the delivery of agricultural products. Bach's claims easily fall within the scope of the agreement, as Bach alleges fraud, misrepresentation, unauthorized transactions in furtherance of fraud, and breach of good faith all relating to the grain delivery contracts.

Finally, the Court must determine whether to stay or dismiss the action.[4] If the Court determines the case is referrable to arbitration, it "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. Despite this statutory language mandating a stay, courts in this circuit have, at times, elected to dismiss the action entirely when all underlying claims are subject to arbitration. *See Rosado-Cruz v. King-Kelly, Inc.*, No. CV 5:21-276-DCR, 2021 WL 5988535, at *2 (E.D. Ky. Dec. 17, 2021) (collecting cases). This judicially-crafted exception is inappropriate, however, when a party has requested a stay. *See Furnwood*, 2022 WL 16703133, at *4 (citing *Ozomoor v. T-Mobile USA, Inc.*, 354 F. App'x 972 (6th Cir. 2009)).

## IV.

Accordingly, the Court hereby ORDERS as follows:

1) The Andersons, Inc.'s motion to compel arbitration (DE 4) is GRANTED;

2) Steven Bach's motion to stay arbitration (DE 6) is DENIED;

3) this matter is COMPELLED to arbitration;

4) subject to intervening orders, this action is STAYED pending the completion of arbitration in accordance with the terms of the parties' agreement;

---

[4] Bach has not asserted any federal statutory claims; therefore, it is not necessary to address the third step under *Stout*, 228 F.3d at 714.

5) the parties are directed to file a joint status report every 60 days, commencing 60 days from this date.

This 8th day of May, 2023.

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY